Gustavo ARIAS d/b/a Gus Trucking
Service, Appellant,

v.

BROOKSTONE, L.P. and Liberty
Mutual Insurance Company,
Appellees.

and

Site Work Group, Inc., Appellant,

v.

Gustavo Arias d/b/a Gus Trucking
Service, Appellee.

and

Brookstone, L.P., Appellant,

v.

Site Work Group, Inc., Appellee.

No. 01–05–00746–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 20, 2007.

Opinion Dissenting from Denial of
Rehearing April 3, 2008.

Mary Frances Masterson, Houston, for appellant.

Gary Martin Jewell, Stephen Ray Smith, Christian, Smith & Jewell, LLP, Michael Lance Burnett, Coats, Rose, Yale, Ryman & Lee, P.C., Houston, for appellee.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

## OPINION

SAM NUCHIA, Justice.

This appeal arises out of disputes over the construction of a new building for the Unity Church of Christianity. Among other things, we must decide whether Property Code section 53.055 requires that a mechanic's, contractor's, and material-

man's lien affidavit be filed with the county clerk before the required notice is given. TEX. PROP.CODE ANN. § 53.055 (Vernon Supp.2007). We hold that it does not.

## Background

Brookstone, L.P. ("Brookstone") was the general contractor on the construction project. Brookstone posted a payment bond in favor of Unity, which was issued by Liberty Mutual Insurance Company ("Liberty Mutual"). Brookstone subcontracted the site preparation to Site Work Group, Inc. ("SWG"). SWG, in turn, subcontracted with Gustavo Arias d/b/a Gus Trucking Service ("Arias") to haul off the excavated material and to supply new fill for the foundation. Problems arose between these parties and also with others who are not involved in this appeal. Primarily, Brookstone was dissatisfied with SWG's work, and SWG was dissatisfied with Arias's work. When Arias was not paid by SWG, he filed lien affidavits against the property, which affected Brookstone and its payment bond issued by Liberty Mutual. Brookstone filed suit seeking a declaratory judgment that Arias had no right to assert liens against the property. Brookstone later added SWG as a defendant, suing for breach of contract. Arias counterclaimed against Brookstone and Liberty Mutual as third-party defendants and cross-claimed against SWG. SWG counterclaimed against both Brookstone and Arias.

After the trial court rendered partial summary judgment on some of the issues in dispute and others were nonsuited, the case was tried to a jury. The trial court rendered judgment on the verdict as follows: (1) Brookstone take nothing from SWG; (2) SWG recover $15,000 from Brookstone along with attorney's fees for its quantum meruit claims; (3) SWG take nothing from Brookstone on its breach-of-contract and other claims; (4) Arias recover $42,000 from SWG along with attorney's fees for his breach-of-contract claim; (5) Arias take nothing from SWG on his fraud claims; and (6) SWG take nothing from Arias on its breach-of-contract claim. The trial court also rendered judgment based on its February 14, 2005 summary-judgment order as follows: (1) Arias take nothing from Liberty Mutual on his claim on a payment bond; (2) the lien affidavits filed by Arias against Unity were invalid; and (3) Arias pay Brookstone and Liberty Mutual $15,000 in attorney's fees.

## Arias's Appeal Against Brookstone and Liberty Mutual

In his first issue, Arias contends the trial court erred in its February 14, 2005 summary-judgment order by dismissing Arias's claim for payment on the payment bond and invalidating his filed lien affidavits. On March 14, 2003, Arias executed lien affidavits and mailed copies to Unity, the property owner, and contractors Brookstone and SWG. On April 4, 2003, Arias filed the affidavits with the county clerk. Brookstone's and Liberty Mutual's motion for summary judgment against Arias raised two grounds: (1) Arias failed to comply with the notice provisions of Property Code section 53.055(a) because he sent copies of the affidavits before he filed them with the county clerk and (2) Arias's May 29, 2003 lien affidavits, filed with the county clerk on May 30, 2003, were not supported by any valid debt. TEX. PROP. CODE ANN. § 53.055 (Vernon Supp.2007). Because the trial court granted the motion without specifying a particular ground, we review both grounds. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

Property Code section 53.055(a) states:

A person who files an affidavit must send a copy of the affidavit by registered or certified mail to the owner or

reputed owner at the owner's last known business or residence address not later than the fifth day after the date the affidavit is filed with the county clerk. In a split decision, the Corpus Christi Court of Appeals has held that section 53.055 does not require that a mechanic's, contractor's, and materialman's lien affidavit be filed with the county clerk before the required notice is given. *New AAA Apartment Plumbers, Inc. v. DPMC–Briarcliff, L.P.*, 145 S.W.3d 728, 730 (Tex. App.-Corpus Christi 2004, no pet.). We agree with this holding.

█ Unless a statute is ambiguous, we construe a statute as written, using the literal text. *Alex Sheshunoff Mgmt. Servs., L.P. v. Kenneth Johnson & Strunk & Assocs., L.P.*, 209 S.W.3d 644, 651–52 (Tex.2006). We resort to external sources like those listed in the Code Construction Act only when the statute is ambiguous. *Id.* at n. 4; Code Construction Act, TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005). As written, the statute only provides the *deadline* for giving notice that a lien affidavit has been executed, not a *period* during which notice may be given.

When a statute is intended to establish a period in which an action must be taken, the legislature's own drafting standard is to set forth clearly the first and last days of the period. TEXAS LEGISLATIVE COUNCIL DRAFTING MANUAL § 7.28, at 99 (Charlotte Norris ed.2006) (giving drafting example of "after March 31 and before June 1" as clear means of describing period). Nothing in the statute clearly states that notice must be given during a period that begins

on the day after the lien affidavit is filed and ends on the fifth day after the date the affidavit is filed. *See* Code Construction Act, TEX. GOV'T CODE ANN. § 311.014 (Vernon 2005) (setting forth means of computing period of time).

█ The heading for section 53.055, "NOTICE OF FILED AFFIDAVIT," does suggest that notice is to be given after filing the affidavit. A statute's heading, however, should not be used to limit or expand the meaning of the statute. Code Construction Act, TEX. GOV'T CODE ANN. § 311.024 (Vernon 2005); *see Brooks v. State*, 682 S.W.2d 437, 438 (Tex.App.-Houston [1st Dist.] 1984, pet. ref'd).

Interpreting a former version of section 53.055, we held that in the absence of a specific deadline to give notice of the lien affidavit to the property owner, notice must be given no later than the deadline to file the affidavit.[1] *Cabintree, Inc. v. Schneider*, 728 S.W.2d 395, 397 (Tex.App.-Houston [1st Dist] 1986, writ ref'd). We further stated that the purpose of section 53.055 "is to ensure that the owner receives *actual* notice that an affidavit has been filed against his property so that he will be able to take steps to protect himself." *Id.* at 396–97 (emphasis original). While the question of whether notice of the lien affidavit could predate the filing of the affidavit was not at issue in *Cabintree*, the language quoted above certainly indicates in dicta that the affidavit should be filed before notice is given. *Id.* We based this dicta not on the then-current text of section 53.055, but instead on an analysis of

---

1. "A person who files an affidavit must send two copies of the affidavit by registered or certified mail to the owner at the owner's last known business or residence address." Act of May 26, 1983, 68th Leg., R.S., ch. 576, sec. 1, § 55.055, 1983 Tex. Gen. Laws 3475, 3540, *amended by* Act of May 28, 1989, 71st Leg., R.S., ch. 1138, § 7, 1989 Tex. Gen. Laws 4693, 4695, *amended by* Act of Apr. 15, 1993, 73d Leg., R.S., ch. 48, § 7, 1993 Tex. Gen. Laws 97, 99, *amended by* Act of May 19, 1997, 75th Leg., R.S., ch. 526, § 7, 1997 Tex. Gen. Laws 1880, 1882, *amended by* Act of May 21, 1999, 76th Leg., R.S., ch. 889, § 2, 1999 Tex. Gen. Laws 3586, 3587.

the text of former Revised Statutes article 5453(1). *Id.;* Act of May 24, 1961, 57th Leg., R.S., ch. 382, § 2, art. 5453(1), 1961 Tex. Gen. Laws 863, 864, *repealed by* Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 6, 1983 Tex. Gen. Laws 3475, 3730. We looked back to the previous statute, article 5453(1), using the rationale that the 1983 enactment of the Property Code was non-substantive. *See* Tex. Prop.Code Ann. § 1.001 (Vernon 2004) (stating Property Code is part of continuing statutory revision program that revises existing law without substantive change); *see also* Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 7, 1983 Tex. Gen. Laws 3475, 3730 ("This Act is intended as a recodification only, and no substantive change in the law is intended by this Act."). The statutory analysis of former article 5453(1) in *Cabintree* turned on the fact that "the requirements of filing the affidavit, and sending copies of the affidavit, are contained in the same sentence." *Cabintree,* 728 S.W.2d at 397.

Since we issued *Cabintree,* the supreme court has held that courts may not look back to the former text of a statute which has been "nonsubstantively" codified if the current text is direct and unambiguous. *Fleming Foods of Texas, Inc. v. Rylander,* 6 S.W.3d 278, 286 (Tex.1999).[2] Our prior analysis in *Cabintree,* based on the text of former article 5453(1), is no longer a permissible means of statutory construction, and we decline to follow the dicta from *Cabintree* that notice must be given after the lien affidavit has been filed.

■ Reading section 53.055 and applying the rules of statutory interpretation cited above, we conclude that the purpose of the statute is to ensure that the owner receives actual notice that a lien affidavit has been executed with the intent to file the affidavit and create a lien against the owner's property, thus allowing the owner or original contractor to take appropriate action. Nothing in the statute requires that the property owner or original contractor be notified that the affidavit was actually filed. Because the person executing the lien affidavit must file the affidavit by the relatively short deadlines stated in Property Code sections 53.052 and 53.056 (generally within two to four months from the date the indebtedness accrues), the owner and original contractor can hardly claim to be hurt when they are notified in advance of the actual filing of the lien affidavit. Tex. Prop.Code Ann. §§ 53.052, 53.056 (Vernon Supp.2007); *see New AAA Apartment Plumbers,* 145 S.W.3d at 730 (purpose of section 53.055 notice is, in part, to

---

**2.** As a separate section of a 2001 enrolled bill that sought to add two new sections to the Code Construction Act, Government Code chapter 311, the legislature voiced its disapproval of *Fleming:*

> The legislature finds the decision of the Texas Supreme Court in *Fleming Foods of Texas, Inc., v. Rylander,* 6 S.W.3d 278 (Tex. 1999), to be inconsistent with the clear and repeatedly expressed intent of the legislature in the enactment of the Tax Code and other nonsubstantive codes enacted under the state's continuing statutory revision program under Section 323.007, Government Code. The absence of any legislative action subsequent to the holding in *Fleming Foods of Texas, Inc., v. Rylander* shall not be

construed as legislative acceptance of the holding in that case.

Tex. H.B. 2809, § 3, 77th Leg., R.S. (2001). The governor disagreed with the amendments to the Code Construction Act and vetoed the bill. Veto Message of Gov. Perry, Tex. H.B. 2809, 77th Leg., R.S. (2001) ("House Bill No. 2809 would fundamentally alter the manner in which Texas courts interpret the written laws of Texas. Besides implicating separation of powers concerns, this bill would tend to make it more difficult for ordinary Texans to ascertain the laws they are bound to obey."). The governor did not comment on the legislative disapproval of *Fleming.*

prevent property owner from being ambushed by recorded lien). In fact, the property owner or original contractor may be able to resolve the dispute before the lien affidavit is filed, preventing a cloud on title to the property. It is in no way absurd for the legislature to allow a property owner or original contractor to receive notice before an affidavit is actually filed, as opposed to five days after the filing occurs, and we decline to rewrite section 53.055 to require that notice can be given only after the lien affidavit is filed.

In their second ground for summary judgment, Brookstone and Liberty Mutual claim that Arias's May 29, 2003 lien affidavits, filed on May 30, 2003, are nullities because they do not refer to a new debt separate from the March 14, 2003 lien affidavits. *See* TEX. PROP.CODE ANN. § 53.024 (Vernon 1995) (limiting amount a subcontractor may claim). In essence, Brookstone and Liberty Mutual are claiming that the May affidavits cannot cure the alleged deficiency in notice associated with the original affidavits. Brookstone and Liberty Mutual admit in their motion for summary judgment that the two sets of affidavits are for the same underlying debt. Because we have held that the March 14, 2003 affidavits are not invalid due to lack of notice, we need not reach Brookstone's and Liberty Mutual's second ground for summary judgment.

We sustain issue one.

In issue two, Arias challenges the trial court's award of attorney's fees under Property Code section 53.156. TEX. PROP. CODE ANN. § 53.156 (Vernon 1995) (allowing attorney's fees "as are equitable and just"). Because we have concluded that the trial court erred in granting Brookstone's and Liberty Mutual's motion for summary judgment, we agree that the trial court's award of attorney's fees was error. *See Page v. Marton Roofing, Inc.,* 102

S.W.3d 750, 754 (Tex.App.-Houston [1st Dist] 2002), *rev'd on other grounds,* 102 S.W.3d 733 (Tex.2003).

We sustain issue two.

In issue three, Arias contends the trial court erred in denying his January 13, 2005 third motion for summary judgment against Liberty Mutual. We overrule this issue because there was a jury trial as to all issues not resolved by summary judgment. Arias, therefore, is not entitled to appeal the denial of his motion for summary judgment. *Cincinnati Life,* 927 S.W.2d at 625.

In issue four, Arias claims the trial court erred in rendering summary judgment for Brookstone on its affirmative defense to Arias's claim that Brookstone misapplied constructive trust funds in violation of Property Code section 162.031. TEX. PROP. CODE ANN. § 162.031 (Vernon 1995). Nowhere in Arias's appellate brief is there an indication that his request for the remedy of a constructive trust is for a claim that is different from the claim that underlies the lien affidavits we have previously discussed in issue one. Because we sustained issue one, it is unnecessary for us to reach issue four.

In Arias's issue five, he asks this Court to award him appellate attorney's fees against SWG according to a Rule 11 agreement in the trial court. *See* TEX.R. CIV. P. 11. We take no action on this issue because Arias is not claiming any error on the part of the trial court.

### Site Work Group's Appeal Against Arias

In two issues, SWG challenges the portion of the final judgment which awarded $42,000 to Arias. SWG first argues that Arias's lawyer committed incurable jury argument by "going outside the record to allege criminal conduct, fraud, and a

conspiracy between SWG and Brookstone." SWG specifically mentions five examples of alleged improper argument: (1) in the first example, SWG did not object; (2) in the second example the trial court sustained SWG's objection; and (3) in the other three examples the trial court did not rule on the objections. The trial court instructed the jury to base the verdict on the evidence and to not let bias, prejudice, or sympathy affect its deliberations. SWG failed to obtain a contemporaneous adverse ruling on its objections, as is normally required to preserve an error for appeal. *See* Tex.R.App. P. 33.1(a).

SWG tacitly acknowledges its lack of preservation at closing argument, as it relies on case law that relieves a party from contemporaneously preserving error concerning an improper jury argument if the argument is incurable. *See, e.g., Otis Elevator Co. v. Wood,* 436 S.W.2d 324, 333 (Tex.1968). The rationale for not requiring a contemporaneous preservation of error is that the lawyer making the incurable argument is the offender, so the law does not require the opposing lawyer to potentially further prejudice the client's case before the jury by objecting. *Id.* Incurable jury argument, however, must be raised in a motion for new trial, which SWG did. *See* Tex.R. Civ. P. 324 (incurable jury argument must be raised in motion for new trial if not otherwise ruled on by the trial judge); *see, e.g., Turner v. Turner,* 385 S.W.2d 230, 237 (Tex.1964) (complaint of incurable jury argument may be made for first time in motion for new trial).

■ Characterizing a jury argument as incurable, as opposed to merely improper, is a serious matter. The supreme court has described this distinction as follows: "Argument which could be properly cured by objection by opposing counsel and instruction by the trial judge is not revers-

ible error in the absence of such objection. Unless the argument is incurable, a litigant will not be permitted to lie in wait, taking a chance on a favorable verdict, and, being disappointed, complain for the first time of improper argument in a motion for new trial." *Turner,* 385 S.W.2d at 237. Accordingly, a party alleging incurable jury argument must explain on appeal why counsel's argument was incurable based on an evaluation of the whole case. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001) (requiring party on appeal to explain why comments were incurable); *Luna v. N. Star Dodge Sales, Inc.,* 667 S.W.2d 115, 120 (Tex.1984) (trial court's decision not to grant mistrial based on incurable argument or questioning may be reversed only after evaluating case from voir dire to closing argument).

This was a week-long jury trial involving multiple parties and witnesses. The appellate record consists of a 15–volume clerk's record and 19–volume reporter's record. In its brief, SWG does not place the alleged improper comments in the context of the entire case, even though it acknowledges there were claims of conspiracy and constructive trust violations that were nonsuited before all sides rested and final argument began. It is an appellant's burden to demonstrate reversible error, and we hold that SWG has not argued the alleged incurable jury argument in light of the entire case. Accordingly, we overrule issue one.

■ In issue two, SWG argues there is legally and factually insufficient evidence to support the jury's answer to question 24:

What sum of money, if paid now in cash, would fairly and reasonably compensate [Arias] for its damages, if any, that resulted from [SWG's] failure to comply? Consider the following elements of damages, if any, and none other:

a. The amount [SWG] agreed to pay [Arias] pursuant to their agreement.

b. Lost profits that, as a natural, probable, and foreseeable consequence of [SWG's] breach of contract, [Arias] suffered in the past;

c. Returned check charges that, as a natural, probable, and foreseeable consequence of [SWG's] breach of contract, [Arias] sustained in the past.

Do not add any amount for interest on damages, if any.

Answer in dollars and cents, if any.

ANSWER: *$42,000.*[00]

SWG preserved its legal-sufficiency complaint in a motion to disregard jury findings and its factual-sufficiency complaint in a motion for new trial.

■■■ When SWG attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, SWG must demonstrate that there is no evidence to support the adverse finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). Such a no-evidence challenge will be sustained when " '(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.' " *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003) (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)). When SWG challenges the legal sufficiency of the evidence that Arias offered to prove a vital fact, "we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary." *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709

(Tex.2003). However, "[t]he final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. . . . [L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). The jury is the sole judge of witnesses' credibility; it may choose to believe one witness over another, and a reviewing court cannot impose its own opinion to the contrary. *Id.* at 819. Because it is the jury's province to resolve conflicting evidence, we must assume that jurors resolved all conflicts in accordance with their verdict if reasonable human beings could do so. *Id.*

■■■ When SWG challenges the factual sufficiency of the evidence, this Court must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *see also Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986), *overruled on other grounds by Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 388 (Tex. 2000); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

At trial and on appeal, SWG does not challenge the sufficiency of the evidence based on all three elements that were submitted to the jury in question 24. SWG does not argue on appeal that the trial court submitted an erroneous charge. We therefore review the sufficiency of the evidence based on the court's charge, not against the question and any instruction that should have been submitted. *See Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex. 2000). Because SWG does not address

each of the three damage elements that was submitted to the jury, we hold that SWG has waived its sufficiency challenge to question 24.

### Brookstone's Appeal Against Site Work Group

 In a single issue, Brookstone appeals the portion of the final judgment which awarded $15,000 to SWG from Brookstone for the "amount of compensable work rendered by SWG for which it was not paid," because the judgment also stated that "SWG take nothing by its claim for breach of contract against Brookstone." This portion of the judgment was based on the answers to questions 5, 6, 7, 9, and 10 in the jury's verdict, which found that Brookstone failed to comply with its agreement with SWG (question 5), that Brookstone's failure to comply was excused (questions 6 and 7), that SWG performed compensable work for Brookstone for which it was not paid (question 9), and that $15,000.00 was the reasonable value of the compensable work (question 10). The jury also found that SWG failed to comply with its agreement with Brookstone (question 1), that SWG's failure was excused (question 2), and that SWG substantially complied (question 3). Because the jury found that Brookstone's breach of contract was excused, the trial instead awarded SWG $15,000 on the quantum meruit claim.

 Brookstone claims the trial court erred in allowing SWG to recover in quantum meruit when the work was performed pursuant to a contract for which Brookstone's breach was excused. Quantum meruit is an equitable remedy which does not arise out of a contract, but is independent of it.[3] *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex.1990). Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished. *Id.* A party to a contract may, however, seek alternative relief under both contract and quantum meruit theories. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 740 (Tex. 2004). The problem is not that the trial court submitted alternative theories of recovery to the jury. Instead, the issue is whether SWG can recover based on quantum meruit once the jury found that Brookstone breached its contract with SWG.

There is no dispute that a written contract exists which covers the services and materials in question. SWG, therefore, cannot recover in quantum meruit unless an applicable exception to the general rule exists. *See DiMiceli v. Affordable Pool Maint., Inc.,* 110 S.W.3d 164, 169 (Tex. App.-San Antonio 2003, no pet.). SWG, however, does not argue that an exception applies here. Instead, it appears to make two arguments. First, SWG claims that case law stating a party can *submit* alternative theories of recovery to the jury also *authorizes* a party to recover both on the contract and in quantum meruit. Second, SWG argues that because Brookstone's breach of contract was excused, there was no "recovery." SWG cites no authority expressly addressing either of these arguments, and we know of none.

Brookstone further challenges the portion of the final judgment which awarded (1) $70,000 to SWG from Brookstone for attorney's fees, plus additional attorney's

---

**3.** A party who has breached the contract cannot normally sue another party to the contract for breach, but there is an exception in construction contracts when the breaching plaintiff has substantially complied with the contract. *Dobbins v. Redden,* 785 S.W.2d 377, 378 (Tex.1990). Due to this exception, SWG was able to successfully sue Brookstone for breach of contract, but the jury found that Brookstone's breach was excused.

fees on appeal, and (2) court costs. Brookstone asks this Court to reverse those awards because SWG did not prevail on its quantum meruit claim and was not a successful party to the suit. *See* TEX.R. CIV. P. 131. We agree.

We sustain Brookstone's single issue.

In its September 15, 2006 appellee's brief, SWG also brings what it calls a "cross-point," claiming the trial court erred in failing to render judgment on the jury's verdict that Brookstone breached the contract (question 5) and damages for that breach were $31,919 (question 8). SWG asks this Court to hold that the two finding that Brookstone's breach was excused (questions 6 and 7) are immaterial. SWG has wholly failed to brief this "cross-point" on either the law or the law's relation to the facts of this case. *See* TEX.R.APP. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Although appellate courts generally construe the briefing rules liberally, points of error or issues unsupported by the citation of authority present nothing for the court to review. *Harris County Mun. Util. Dist. No. 48 v. Mitchell,* 915 S.W.2d 859, 866 (Tex. App.-Houston [1st Dist.] 1995, no writ). Accordingly, we hold that SWG waived its "cross-point" concerning recovery of $31,919 on its breach-of-contract claim.

## Conclusion

We reverse the portions of the judgment that (1) dismissed Arias's claim for payment on the payment bond and invalidated his filed lien affidavits, (2) awarded attorney's fees from Arias to Brookstone and Liberty Mutual, and (3) awarded $15,000 from Brookstone to SWG, as well as attorney's fees and court costs.

We affirm the remainder of the judgment and remand the case to the trial court for the limited purposes of considering (1) Arias's claim on the payment bond and (2) and any motion to sever.

EVELYN V. KEYES, Justice,
dissenting from denial of rehearing.

Our December 20, 2007 opinion interpreting section 53.055 of the Property Code holds that a person claiming a mechanic's, contractor's, and materialman's lien against property may satisfy the requirements of the section by sending a copy of the lien affidavit to the owner of the property at any time before the lien is filed with the county clerk or within five days thereafter. *See* TEX. PROP.CODE ANN. § 53.055 (Vernon 2007) ("Notice of Filed Affidavit"). In their motion for rehearing, appellees Brookstone, L.P. and Liberty Mutual Insurance Company argue that section 53.055 is designed to give notice of the date of filing of the lien, that "notice" of filing sent prior to the filing cannot give notice of the actual filing, and that our holding upsets a carefully articulated statutory scheme and is incorrect. I agree with appellees, and, therefore, I respectfully dissent from denial of rehearing.

Property Code section 53.055(a) states:

A person who files an affidavit must send a copy of the affidavit by registered or certified mail to the owner or reputed owner at the owner's last known business or residence address not later than the fifth day *after* the date the affidavit is filed with the county clerk.

TEX. PROP.CODE ANN. § 53.055(a) (Vernon 2007) (emphasis added).

Despite the plain language of section 53.055 stating that a person who files a lien affidavit must send a copy ... to the owner of the property against which the lien has been filed "not later than the fifth day *after* the date the affidavit is filed with the

county clerk," and despite the title, "Notice of *Filed* Affidavit," our December 12, 2007 opinion holds that the person filing the lien can comply with the notice statute by simply sending a copy of the lien affidavit at any time *before* the lien is filed so long as the copy of the affidavit is sent not later than five days after the lien is actually filed. Such an interpretation gives no notice of the actual date of filing of the lien. In other words, it contravenes the very purpose of the statute, which is to give notice. It also contravenes the plain language of the statute and its title. Thus, I disagree with our December 20, 2007 holding.

I likewise agree with appellees' reasoning in their motion for rehearing and disagree with the reasoning by which we reached the December 20, 2007 holding. In reaching our conclusion in that opinion, we distinguished and effectively overruled a prior opinion of this Court, *Cabintree, Inc. v. Schneider,* 728 S.W.2d 395, 397 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd), which construed a previous version of section 53.055, article 5453(1) of the Texas Revised Civil Statutes. At the time *Cabintree* was decided, section 53.055 provided that a person who filed an affidavit "must send two copies of the affidavit by registered or certified mail to the owner," but it set no deadline for compliance with the section. *See Cabintree,* 728 S.W.2d at 396. We noted that the then current version of section 53.055 was silent as to when the notice must be sent, but we followed the rule of construction that when prior law has merely been recodified without substantive revision, as the Texas Property Code was in 1984, the wording and context of the prior law is controlling. *Id.* at 397; *see also* Tex. Prop.Code Ann. § 1.001 (Vernon 1984) (classifying Texas Property Code as non-substantive revision of Texas Revised Civil Statutes). We held that "the notice of filed affidavit must be sent to the owner within the same period applicable to the filing of the affidavit," stating, "The purpose of § 53.055 is to ensure that the owner receives *actual* notice that an affidavit has been filed against his property so that he will be able to take steps to protect himself. This purpose is frustrated if the notice is not sent in a timely manner." *Id.* at 396–97.

In our December 20, 2007 opinion in this case, we repudiated not only the holding but the reasoning in *Cabintree,* stating "Our prior analysis in *Cabintree,* based on the text of former article 5453(1), is no longer a permissible means of statutory construction, and we decline to follow the dicta from *Cabintree* that notice must be given after the lien affidavit has been filed." *Arias v. Brookstone,* 01–05–00746–CV, 2007 WL 4465517, at *3 (Tex.App.-Houston [1st Dist.] Dec. 20, 2007, no pet. h.). Citing *Fleming Foods of Texas, Inc. v. Rylander,* 6 S.W.3d 278 (Tex.1999), as authority, we stated that "courts may not look back to the former text of a statute which has been 'nonsubstantively' codified if the current text is direct and unambiguous." *Arias,* 2007 WL 4465517, at *3.

Appellees argue that our December 20 opinion misconstrues *Fleming Foods.* I agree. In *Fleming Foods,* the Texas Supreme Court held that an express change in the terms of a statute by the Legislature upon recodification overrides contrary language in the prior version of the statute regardless of a general provision in the Code stating that recodification is not intended to make substantive changes in the law. *See* 6 S.W.3d at 283–84. The supreme court explained:

Under the Code Construction Act, *see* Tex. Gov't Code §§ 311.001–.032, ... courts may consider prior law, the circumstances under which the law was enacted, and legislative history among

other matters to aid them in construing a code provision "whether or not the statute is considered ambiguous on its face," TEX. GOV'T CODE ANN. § 311.203. But prior law and legislative history cannot be used to alter or disregard the express terms of a code provision when its meaning is clear from the code when considered in its entirety, unless there is an error such as a typographical one. Nor can the Code Construction Act's directive to the Legislative Council to refrain from changing the sense, meaning, or effect of a previous statute, *see id.* § 323.007(b), be used as a basis to alter the express terms of a code that the Legislature enacts as law, even when the Council's language does change the prior, repealed law.

6 S.W.3d at 283–84. The court then instructed that the Legislature's general statement that "no substantive change in the law is intended" by recodification "must be considered with the clear, specific language used" in the recodified sections. *Id.* at 284.

In my view, our December 20, 2007 opinion erroneously interprets *Fleming Foods* as holding that "courts may not look back to the former text of a statute which has been 'nonsubstantively' codified if the current text is direct and unambiguous." *Arias,* 2007 WL 4465517, at *3. The opinion then goes on to interpret the notice language in current section 53.055—which

expressly mandates that "[a] person who *files* an affidavit must send a copy of the affidavit by registered or certified mail to the owner ... not later than the fifth day *after* the date the affidavit is filed"—as actually meaning the *opposite* of what it directly and unambiguously says, namely, as meaning that the affidavit need *not* be on file when notice of a filed affidavit is sent and that the notice need *not* be sent within five days "*after* the date the affidavit is filed."

I cannot agree with our interpretation of the mandate of *Fleming Foods* or with our conclusion that current section 53.055 clearly and specifically requires us to hold that a "notice of filed affidavit" may be given before the affidavit is filed. As *Fleming Foods* states, proper code construction requires that in determining the meaning of a statute in an integrated code chapter, we consider the code in its entirety. *See Fleming Foods,* 6 S.W.3d at 282 ("The doctrine of legislative acceptance contemplates that " '[a] statute of doubtful meaning that has been construed by the proper administrative officers, when reenacted without any substantial change in verbiage, will ordinarily receive the same construction.' " "); *see also* TEX. GOV'T CODE ANN. §§ 311.021,[1] 311.023 [2] (Vernon 2005). Indeed, the Texas Supreme Court has specifically directed that

we must always consider the statute as a whole rather than its isolated provisions.

---

1. Section 311.021 provides, *inter alia,* that when the Legislature enacts a statute, "it is presumed that ... (2) *the entire statute is presumed to be effective"* and *"a just and reasonable result is intended."* TEX. GOV'T CODE ANN. § 311.021 (Vernon 2005) (emphasis added).

2. Section 311.023 provides:

In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:

(1) *object sought to be attained;*

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) *common law or former statutory provisions,* including laws on the same or similar subjects;

(5) *consequences of particular construction;*

(6) administrative construction of the statute; and

(7) *title (caption),* preamble, and emergency provision.

TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005) (emphasis added).

We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone. We must presume that the Legislature intends an entire statute to be effective and that a just and reasonable result is intended.

*Helena Chemical Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001) (citations omitted); *see also Ken Petroleum Corp. v. Questor Drilling Corp.,* 24 S.W.3d 344, 350 (Tex.2000) (citing *Fleming Foods* and section 311.023 of the Government Code and stating that "[i]n determining legislative intent, the Legislature has instructed that we may consider, among other things, the object the Legislature sought to obtain, the circumstances under which the statute was enacted, legislative history, and the consequences of a particular construction").

Section 63.055 is an integral part of a statutory scheme governing the perfection of mechanic's, contractor's and materialman's liens. *See, e.g.,* TEX. PROP.CODE ANN. §§ 53.051 ("To perfect the lien, a person must comply with this subchapter."); 52.052 (setting out deadlines for person claiming lien to file affidavit, running from day on which indebtedness accrues and requiring clerk to record affidavit); 53.053 (setting deadlines for accrual of indebtedness); 53.054(a) and (b) (setting out contents of lien affidavit, including dates of each notice to owner); 53.056 (setting out requirements for notice by derivative claimant); and 53.081 (conveying authority to withhold funds for claimants).

Employing the rules of statutory construction, and considering the language and purpose of current section 53.055 and prior law, I agree with appellees that interpreting section 53.055 as requiring notice within 5 days after the filing of the lien accords with prior law, reflects the intent of the Legislature, preserves the statutory scheme set out in related sections within the same subchapter of the Texas Property Code, and is just and reasonable. *See Cabintree,* 728 S.W.2d at 397; TEX. GOV'T CODE ANN. § 311.021, 311.023(1). I would hold that *Cabintree* is good law and precedent in this Court and that *Cabintree,* the plain language of current section 53.055, and the foregoing considerations all support the interpretation that section 53.055 requires that an affidavit giving notice of a filed mechanic's, contractor's, or materialman's lien must be sent to the owner or reputed owner of the property against which the lien has been filed within five days *after* the lien is filed. An affidavit of filed lien sent *before* the lien is filed does not substantially comply with the statute.

Because I would hold that a person does not comply with the Property Code by sending an affidavit of filed lien to the property owner prior to the filing of the lien, I would grant rehearing on this issue.

Justice KEYES, dissenting from denial of rehearing.