Opinion issued March 12, 2009

















 



    



In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00702-CV
____________

JOHN HILL, Appellant

V.

FREDERICK F. HOELKE and FREDERICK F. HOELKE, P.C., Appellees




On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2004-56944



 
MEMORANDUM OPINION

          Appellant, John Hill, appeals the take-nothing judgment rendered against
him after a bench trial of his suit alleging breach of fiduciary duty, breach of
contract, fraud, and promissory estoppel against appellees, Frederick F. Hoelke and
Frederick F. Hoelke, P.C. (collectively, “Hoelke”). We determine whether the
evidence was legally and factually sufficient to support the trial court’s findings of
fact and conclusions of law.
          We affirm.
Background
          In 2001, C-Networks, an investment group led by David Hill—the brother of
appellant John Hill—was attempting to acquire Hispanic Television Network
(“HTVN”). C-Networks entered into an agreement with HTVN to make an initial
payment of $1.5 million dollars followed by 10 monthly payments of $500,000 in
order to complete the acquisition.
          On January 30, 2001, John Hill and Hoelke entered into a letter agreement
which stated that Hoelke was acting as the escrow agent in the transaction between
C-Networks and HTVN and that “[t]he monies wired or deposited into [Hoelke’s]
law firm trust account shall not be released without [Hill’s] express written
instructions.”
          On February 2, 2001, Hill wired $150,000 from a personal account and
$350,000 from a loan he obtained from his wife’s trust account into Hoelke’s law
firm trust account. On February 6 and 7, 2001, Hoelke disbursed $600,000 from
his law firm trust account to HTVN’s creditors. At the end of February 2001, Hill
received two millions shares of HTVN stock issued in his and his wife’s name. 
John Hill did not attempt to return the HTVN shares, nor did he make any written
complaints or attempts to collect the $500,000 deposited with Hoelke. In August 2002, HTVN declared bankruptcy and was taken over by another
corporation called Firestone. On October 8, 2004, more than three years after his
dealings with Hoelke, Hill filed this lawsuit in the trial court. His petition alleged
breach of fiduciary duty, breach of contract, fraud/fraudulent inducement,
constructive fraud, and promissory estoppel against Hoelke. Hill claimed that
Hoelke was a fiduciary and trustee who served as his escrow agent, that Hill had
deposited $500,000 in Hoelke’s law firm trust account because Hoelke agreed not
to disburse the funds without express written instructions, that he never gave any
instructions regarding the disbursal of his money, that Hill disbursed the money to
“unknown persons,” and that Hoelke had refused to return Hill’s money. Hoelke
denied Hill’s complaints, and a bench trial was conducted on January 10 and 11,
2007.
          At trial, Hill testified that he never intended to be an investor on behalf of
C-Networks in its acquisition of HTVN. Hill claimed that he deposited his money
with Hoelke in order to help his brother, David Hill, show that he had the financial
stability to complete the deal between C-Networks and HTVN and that he expected
to get the money back in a few weeks. Hill also claimed that he, Hoelke, and
David Hill conducted two conference calls in February 2001 in which Hoelke and
David Hill “attempt[ed] to work deals” that would have involved him as an
investor and tried to get him to “release [his] funds.” At the end of the second
conference call, Hill claims that he asked Hoelke to return his money, and Hoelke
said that he would. He claimed that he never gave Hoelke any form of
authorization to disburse his funds and that he did not know anything about C-Networks, HTVN, or any of HTVN’s creditors who received money from Hoelke’s
law firm trust account.
          Hill also testified that he did not know why he received the two million
shares of HTVN stock. He did not attempt to contact Hoelke or anyone at HTVN,
but he testified that he did call David Hill to ask him what was going on. 
According to Hill, David Hill said to send the stock certificates to him and to give
him some time to work things out so he could get Hoelke to return Hill’s money. 
Hill acknowledged that he did not pay Hoelke anything and that Hoelke did not
receive any personal benefit from the transaction. Hill still had possession of the
stock certificates at the time of trial. David Hill did not testify at the trial.
          Hoelke testified that Hill was a principal and investor of C-Networks and
that Hill was involved in C-Networks’ acquisition of HTVN as an investor. 
Michael Stewart, who was on HTVN’s board of directors starting February 1,
2001, also testified that Hill was one of the principal investors in the deal. Both
Hoelke and Steven Mortonson, the interim CFO of HTVN, testified that they were
not aware of any requirement for particular C-Networks investors to show financial
stability in order to conclude the transaction between C-Networks and HTVN.
          Hoelke spoke with Hill on January 30, 2001, the same day that they entered
into the letter agreement, and he claimed that Hill’s only concern was to ensure
that the shares of stock would be issued in his and his wife’s name.
          Hill wired the money to Hoelke’s trust account on February 2, 2001, and
Hoelke again spoke with Hill. Hoelke testified:
          I talked to [Hill] again on the telephone, and I verified the
receipt of the money, although it wasn’t posted until after business
hours, after 2:00 o’clock.
          And I told him that we had received the money, that his brother
[David Hill] wanted to have the change of control take place almost
immediately, but they had press releases waiting to go out. [I] [a]sked
him what he wanted to do, and he told me to disburse the money, and
I told him I needed written authorization.
          And he said—and he represented to me that he would send it
contemporaneous or right after he got off the phone with me.
 
He claimed that Hill sent written instructions to HTVN headquarters in Fort Worth. 
Hill’s trial counsel questioned Hoelke regarding the written instructions:
[Hill’s counsel]:    You didn’t see that authorization, did you?
 
[Hoelke]:               I believe I saw it. I recall a secretary alerting me
that it had arrived.
 
[Hill’s counsel]:    And so are you certain that you have seen a written
authorization from Mr. Hill to disburse his money?
 
[Hoelke]:               To the best of my recollection, sir.
 
[Hill’s counsel]:    And what do you recall that it said?
 
[Hoelke]:               Best of my recollection is, is you have the
authority to disburse the money because that was
one of the key groups of money for this transaction
to go forward.
 
          Hoelke testified that on January 6, 2001, the same day that he first disbursed
the money deposited by Hill, there was a meeting of HTVN’s board and the
C-Networks investors. Stewart and Hoelke both testified that this meeting was
intended to discuss the basic terms of the deal between C-Networks and HTVN
and that they discussed the most pressing financial needs facing HTVN. At the
meeting, it was decided that some of the initial $1.5 million payment would be
made directly to HTVN’s creditors. Hoelke testified that he spoke with the board
and C-Networks investors regarding their instructions for whom to pay and that he
paid the funds from his law firm trust account pursuant to the verbal and written
authorization he had received from Hill earlier in the week.
          When he was asked why he could not produce the written authorization at
the trial, Hoelke said:
[Hoelke]:               I looked for it. I looked for it. I looked through
the records that survived the Hispanic Television
Network bankruptcy. They were not present in
there. I looked for it at the offices of the chairman
of the board. He could not find it. Most of the
records were trashed when the Firestone family
took over control of the company and took the
assets of the company.
 
[Hill’s counsel]:    Well, as escrow agent certainly any authorization
was sent to you?
 
[Hoelke]:               It was sent to me at the offices of HTVN.
 
. . . . 
 
[Hill’s counsel]:    You understood that when you received that
purported written authorization that you are telling
the Court now you got, that it was an important
document to hold on to?
 
[Hoelke]:               There was [sic] a number of important documents
that were held on to by the company. The
company usually maintained a duplicate copy, but
for some odd reason not all the documents are
present.
 
          Regarding the two phone calls in February, Hoelke testified that he spoke
with Hill on February 8, 2001, because Hill wanted to know when his shares of
stock would be transferred to him. On February 14, 2001, Hoelke had a
conference call with Hill, his brother David Hill, and another investor, Richard
Halden. Hoelke testified that the Hill brothers wanted to trade their restricted
stocks for the free-trading shares held by Halden, and they also discussed whether
Halden or John Hill would be able to contribute any more money to the acquisition
of HTVN. Halden refused the Hill brothers’ offer to trade stocks, but Halden did
loan C-Networks $600,000. Hoelke spoke with Hill once more on February 26,
2001. He stated that Hill “wanted to ensure [that] the shares of stock which had
just been delivered by courier to the transfer agent from Dallas were properly titled
and registered in the name of John and Deborah Hill” and “inquired about the
500,000 warrants that were due to him pursuant to the subscription agreement.”
          Hoelke claimed that Hill never contacted him with any attempts to have his
$500,000 repaid. Hoelke also presented the testimony of Steven Mortonson, the
interim CFO of HTVN for the time that Hill was involved with the company. 
Mortonson testified that in early 2002, HTVN needed to increase its number of
authorized outstanding shares, so he mailed a form to shareholders informing them
of the need and asking for their approval. Mortonson testified that Hill and his
wife returned their form rejecting the proposal—one of only two shareholders who
rejected the proposal. Mortonson testified that the form was not available at trial
because it had been lost after HTVN declared bankruptcy and was taken over by
another corporation in August of 2002.
          The trial court issued a take-nothing judgment against Hill on May 23, 2007. 
The trial court issued amended findings of fact and conclusions of law August 31,
2007.
Sufficiency
In his sole issue, Hill generally argues that the trial court’s findings of fact
and conclusions of law were not supported by legally or factually sufficient
evidence. We have reviewed the substance of his appellate arguments, and have
determined that he specifically complains that the trial court’s conclusions and
findings on his breach of contract, promissory estoppel, and breach of fiduciary
duty claims were not supported by legally and factually sufficiently evidence. See
Tex. R. App. P. 38.1(e), 38.9; Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690
(Tex. 1989) (“[I]t is our practice to construe liberally points of error in order to
obtain a just, fair and equitable adjudication of the rights of the litigants.”).
A.      Standard of Review
          In an appeal of a judgment rendered after a bench trial, the trial court’s
findings of fact have the same weight as a jury’s verdict, and we review the legal
sufficiency of the evidence used to support them just as we would review a jury’s
findings. Daniel v. Falcon Interest Realty Corp., 190 S.W.3d 177, 184 (Tex.
App.—Houston [1st Dist.] 2005, no pet.) (citing Catalina v. Blasdel, 881 S.W.2d
295, 297 (Tex. 1994)). In conducting a legal-sufficiency review, we credit
favorable evidence if a reasonable fact-finder could and disregard contrary
evidence unless a reasonable fact-finder could not. City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005); Brown v. Brown, 236 S.W.3d 343, 348 (Tex.
App.—Houston [1st Dist.] 2007, no pet.). We consider the evidence in the light
most favorable to the finding under review and indulge every reasonable inference
that would support it. City of Keller, 168 S.W.3d at 822. We must sustain a no-evidence contention only if: (1) the record reveals a complete absence of evidence
of a vital fact; (2) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of the vital fact. Id. at 810; Merrell Dow Pharm., Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997).
          In reviewing a challenge to the factual sufficiency of the evidence, we must
consider and weigh all the evidence and should set aside the judgment only if it is
so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Arias v. Brookstone, L.P., 265 S.W.3d 459, 468 (Tex. App.—Houston [1st
Dist.] 2007, pet. denied) (citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986)).
The trial court acts as fact-finder in a bench trial and is the sole judge of the
credibility of witnesses. HTS Servs., Inc. v. Hallwood Realty Partners, L.P., 190
S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.).
B.      Breach of Contract
          The trial court found by a preponderance of the evidence that “there was a
valid, enforceable contract between the parties to hold the funds in the IOLTA
account of [Hoelke] until written authorization [was given] by [Hill].” The trial
court also found that Hoelke did not breach this contract and that Hill’s testimony
regarding any alleged breach by Hoelke was not credible.
          The elements of a breach of contract claim are: (1) the existence of a valid
contract; (2) performance or tendered performance by the plaintiff; (3) breach of
contract by the defendant; and (4) damages sustained as a result of the breach. 
Valero Mktg. & Supply Co. v. Kalama Int’l, L.L.C., 51 S.W.3d 345, 351 (Tex.
App.—Houston [1st Dist.] 2001, no pet.). Neither party contests the trial court’s
conclusion that a valid contract existed between Hill and Hoelke or that Hill wired
$500,000 to Hoelke’s law firm trust account.
          Hill argues, however, that the evidence supporting the trial court’s finding
that Hoelke did not breach their agreement was not legally or factually sufficient. 
We disagree and hold that the evidence was legally and factually sufficient to
support the trial court’s determination that Hoelke did not breach his agreement
with Hill. The letter that Hoelke sent to Hill stated that Hoelke was acting as the
escrow agent for the transaction between C-Networks and HTVN and promised
that “[t]he monies wired or deposited into [Hoelke’s] law firm trust account shall
not be released without [Hill’s] express written instructions.” Hoelke and Stewart
testified that Hill was a principal of C-Networks and a key investor in its
acquisition of HTVN. Hoelke’s testimony established that the money was
deposited in the trust account to be used in C-Network’s acquisition of HTVN. 
Hoelke also testified that Hill gave him both verbal and written approval to
disburse the deposited funds as directed by HTVN’s board of directors and others
involved in conducting the acquisition. Hill received two million shares of HTVN
stock in return for his participation as an investor in the deal between C-Networks
and HTVN. We hold that there is more than a scintilla of evidence to support the
trial court’s finding that Hoelke did not breach his agreement with Hill. See City of
Keller, 168 S.W.3d at 810.
          Furthermore, considering and weighing all the evidence, we hold that the
trial court’s judgment was not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. See Arias, 265 S.W.3d at 468. Hill
argues that his testimony that he was not part of C-Network’s bid to acquire
HTVN, that he did not intend to act as an investor, and that he never gave any oral
or written instructions to Hoelke to disburse his funds undermine the trial court’s
findings. However, the trial court expressly found that Hill’s testimony was not
credible. See HTS Servs., 190 S.W.3d at 111 (stating that the trial court acts as
fact-finder in bench trial and is sole judge of credibility of witnesses). Hill also
argues that Hoelke’s testimony was undermined by the fact that he could not
produce Hill’s written consent at trial. However, Hoelke testified that Hill sent his
consent to Hoelke while he was at HTVN’s headquarters, and Hoelke and
Mortonson testified that the majority of HTVN’s documents had been destroyed
after it was acquired by Firestone and were no longer available. The trial court
found this testimony credible. See id.
          Therefore, we conclude that the evidence was legally and factually sufficient
to support the trial court’s finding that Hoelke did not breach his agreement with
Hill. See City of Keller, 168 S.W.3d at 810; Arias, 265 S.W.3d at 468.
C.      Promissory Estoppel
          Regarding Hill’s promissory estoppel claim, the trial court found, by a
preponderance of the evidence, that Hoelke “made a promise to [Hill] that the
funds . . . would not be distributed without [Hill’s] written authorization” and that
Hoelke “did not breach the aforementioned promise.” The court found “that John
Hill’s testimony was not credible regarding any alleged breach by [Hoelke] as well
as any alleged damages . . . .” Hill argues that the evidence supporting the trial
court’s finding that Hoelke did not breach his promise was legally and factually
insufficient.
          The elements of a promissory estoppel claim are: (1) a promise; (2) reliance
thereon that was foreseeable to the promisor; and (3) substantial reliance by the
promisee to his detriment. Miller v. Raytheon Aircraft Co., 229 S.W.3d 358,
378–79 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing English v. Fischer,
660 S.W.2d 521, 524 (Tex. 1983)).
          Again, neither party disputes that Hoelke made a promise not to disburse the
funds deposited in his law firm trust account without express written instructions
from Hill or that Hoelke could have foreseen that Hill relied on that promise when
he deposited his funds. However, Hill claims that he suffered detriment because he
never gave any instructions to Hoelke to disburse his funds, so Hoelke’s release of
the funds was a breach of their agreement. Hill argues that he also suffered
detriment because his funds were never returned to him.
          As we have already discussed, the evidence supporting the trial court’s
conclusion that Hoelke did not breach his agreement with Hill is both legally and
factually sufficient. Hill received two million shares of HTVN stock in return for
his investment. Hill still had the stock at the time of the trial and had never tried to
return it to anyone at HTVN or to Hoelke, nor did he write any letters questioning
why he was given the two million shares or send Hoelke any formal request that
his money be returned prior to the filing of his lawsuit in 2004, more than three
years after the transaction took place.
          Therefore, we conclude that there was more than a scintilla of evidence
supporting the trial court’s findings on Hill’s promissory estoppel claims, and the
trial court’s judgment was not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. See City of Keller, 168 S.W.3d at 810;
Arias, 265 S.W.3d at 468.
D.      Breach of Fiduciary Duty
          Regarding Hill’s breach of fiduciary duty claims, the trial court stated, 
[I]t is not clear whether the parties actually had a fiduciary
relationship. However, the Court further finds by a preponderance of
the evidence that even if the parties did have a fiduciary relationship,
[Hoelke] did not breach any fiduciary duty to [Hill]. The Court finds
there was no constructive fraud and that [Hill’s] testimony was not
credible regarding any alleged breach of fiduciary duty/constructive
fraud by [Hoelke] (specifically, but not limited, to [Hill’s] testimony
that he did not give [Hoelke] oral or written authorization to disburse
the funds in question).
          The Court finds [Hoelke’s] testimony was credible that [Hill]
authorized him on the phone to disburse the funds; followed the
telephone call with the faxed written authorization; the authorization
was received in [Hoelke’s] office, [Hoelke] saw it; [Hoelke] released
the funds; and [Hoelke] received no financial benefit from holding or
releasing such funds.
 
Hill bases his argument that Hoelke breached his fiduciary duty on the fact that
Hoelke also breached their written letter agreement.
          The elements of a breach of fiduciary duty claim are: (1) a fiduciary
relationship must exist between the plaintiff and defendant; (2) the defendant must
have breached this duty; and (3) the breach must result in injury to the plaintiff or
benefit to the defendant. Jones v. Blume, 196 S.W.3d 440, 447 (Tex. App.—Dallas
2006, pet. denied). As we have already addressed, the evidence was legally and
factually sufficient to support the trial court’s determination that Hoelke did not
breach his agreement with Hill. Assuming without deciding that a fiduciary
relationship existed between Hill and Hoelke, we conclude that there was more
than a scintilla of evidence supporting the trial court’s finding that Hoelke did not
breach any fiduciary duty he might have owed Hill, and the trial court’s judgment
was not so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.


 See City of Keller, 168 S.W.3d at 810; Arias, 265 S.W.3d at
468.
          Therefore, we hold that the evidence was legally and factually sufficient to
uphold the trial court’s finding that Hoelke did not breach any fiduciary duty that
he might have owed to Hill.
          We overrule Hill’s sole issue.
Conclusion
          We affirm the judgment of the trial court.





 
Tim Taft
                    Justice

Panel consists of Justices Taft, Bland, and Sharp.