NUMBER 13-09-00035-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


PAUL PONTON AND JOYCE M. PONTON, Appellants,


v.


RICHARD MILLER AND JARVIS MILLER, Appellees.

 




On appeal from the 156th District Court


of Live Oak County, Texas.


 




MEMORANDUM OPINION



Before Justices Rodriguez, Benavides, and Vela


Memorandum Opinion by Justice Benavides


 After a jury trial, the jury found that Joyce M. and Paul Ponton, appellants,
trespassed on land owned by Richard and Jarvis Miller, appellees. The jury awarded cost
of restoration damages totaling $87,000. On October 22, 2008, the trial court entered
judgment on the verdict. The Pontons appealed, asserting that (1) the trial court submitted
an improper measure of damages; (2) the evidence is legally and factually insufficient to
support the damages award; and (3) the evidence is legally and factually insufficient to
support the jury's finding that Joyce Ponton trespassed on the Millers' property. We affirm.

I. Background (1)

 This case calls into question the adage that "fences make good neighbors." The
Pontons and the Millers own adjacent property on the shores of Lake Corpus Christi. At
one time, a drainage ditch divided the two properties. A fence exists on the Millers' side
of the ditch. When the Pontons purchased their lot in December 2004, they believed that
this fence marked the boundary line between the two properties. Because the ditch
collected water, fallen trees, debris and even dead animals, the Pontons filled in the ditch
using dirt provided by a road construction company performing work in nearby Mathis,
Texas. Subsequent to filling in the ditch, the Pontons learned that the fence did not mark
the boundary between the properties; the Millers actually owned the ditch.

 Additionally, in an effort to maintain their shoreline, the Pontons hired a bulldozer
contractor to "clean" the shoreline. The bulldozer operator cleared grass, brush and other
debris, including some trees, off of the shoreline on the Ponton's property. However,
according to the Millers, the bulldozer operator also removed dirt from their portion of the
shoreline.

 The Millers sued the Pontons alleging that the Pontons' actions amounted to a
trespass on the Millers' property. The Pontons filed a counterclaim asserting that they
owned the ditch by adverse possession. See Tex. Civ. Prac. & Rem. Code Ann. § 16.026
(Vernon 2002). The case was tried to a jury, which concluded that the Pontons trespassed
on the Millers' land. The trial court submitted a jury charge that included a question asking
the jury to calculate damages based on the cost to restore the Millers' property to the
condition it was in prior to the Pontons filling in the ditch and removing dirt from the
shoreline. The jury found that the cost to restore the ditch is $71,500 and the cost to
restore the shoreline is $15,500. The trial court rendered judgment on the verdict, and this
appeal ensued.

II. Proper Measure of Damages

 In their first issue, the Pontons argue that the trial court erred by submitting a cost
of restoration measure of damages to the jury instead of submitting a diminution in fair
market value measure of damages. The Pontons assert that because the cost of
restoration exceeds the diminution in value of the ditch and the shoreline, the proper
measure of damages is the diminution in value of those specific parts of the Millers'
property. The Millers contend that cost of restoration is the appropriate measure of
damages because the cost to restore is less than the diminution in value of their entire
property.

 The proper measure of damages is a question of law. Allied Vista, Inc. v. Holt, 987
S.W.2d 138, 141 (Tex. App.-Houston [14th Dist.] 1999, pet. denied). We review de novo
the trial court's decision of which measure of damages to apply. C.C. Carlton Indus., Ltd.
v. Blanchard, 311 S.W.3d 654, 662 (Tex. App.-Austin 2010, no pet. h.) (citing TA
Operating Corp. v. Solar Applications Eng'g, Inc., 191 S.W.3d 173, 183 (Tex. App.-San
Antonio 2005, pet. granted); Matheus v. Sasser, 164 S.W.3d 453, 458 (Tex. App.-Fort
Worth 2005, no pet.)). A trial court commits reversible error when it instructs the jury on
an improper measure of damages. See Arthur Andersen & Co. v. Perry Equip. Corp., 945
S.W.2d 812, 817 (Tex. 1997).

 Generally, "[w]hen an injury to land is temporary and can be remediated at
reasonable expense, the proper measure of damages is the cost of restoration to its
condition immediately preceding the injury." Mieth v. Ranchquest, Inc., 177 S.W.3d 296,
303 (Tex. App.-Houston [1st Dist.] 2005, no pet.) (op. on reh'g) (citing Kraft v. Langford,
565 S.W.2d 223, 227 (Tex. 1978)). "However, the diminution in fair market value is the
measure of damages when the cost of restoration exceeds the diminution in fair market
value. Id. at 303-04 (citing North Ridge Corp. v. Walraven, 957 S.W.2d 116, 119 (Tex.
App.-Eastland 1997, pet. denied)); see Atlas Chem. Indus., Inc. v. Anderson, 514 S.W.2d
309, 319 (Tex. Civ. App.-Texarkana 1974), aff'd, 524 S.W.2d 681 (Tex. 1975) (op. on
reh'g).

 The Pontons contend that, based on their calculations using Richard Miller's
testimony regarding the fair market value of the Millers' property, the cost to restore the
ditch and the shoreline exceeds the diminution in value of those specific areas of the
Millers' property. Citing Anderson, the Pontons assert that the fair market value of only the
damaged portions of the property is to be considered in determining which measure of
damages to apply. See Anderson, 514 S.W.2d at 319 (applying diminution in value as the
measure of damages and holding that the evidence supported the jury's finding that the
diminution in value was $175 per acre and that 60 acres out of 185 total acres was
damaged). The Millers argue that the fair market value of the entire property must be
considered in determining whether to apply cost of restoration or diminution in value.

 Unlike in Anderson, no evidence was admitted regarding the diminution in value of
either the entirety of the Millers' property or specifically of the ditch and shoreline. See id. 
We will not assume, as the Pontons urge, that the diminution in value of the ditch and
shoreline is "100%." Thus, without any record evidence to support the Pontons' argument,
we cannot conclude that the diminution in value of the ditch and shoreline was greater than
the cost to restore those areas. Additionally, as the Eastland Court of Appeals noted in
North Ridge Corporation v. Walraven, when determining whether the cost of repair or
restoration exceeds the diminution in value, the diminution in value of the entire property
is to be considered. 957 S.W.2d 116, 119-120 (Tex. App.-Eastland 1997, pet. denied)
(finding that when the cost of restoration or repair of the damaged portion of the property
is more than six times greater than the value of the entire property, diminution in value is
the proper measure of damages). The Pontons' first issue is overruled. (2)

III. Sufficiency of the Evidence

 In their second issue, the Pontons argue that the evidence is legally and factually
insufficient to support the jury's damages awards. Specifically, the Pontons contend that
the evidence supporting the jury's award for restoring the ditch is factually insufficient and
that the evidence supporting the jury's award for restoring the shoreline is legally and
factually insufficient.

A. Standard of Review

 When we perform a legal sufficiency review, we review the evidence in the light
most favorable to the verdict, crediting favorable evidence if a reasonable person could and
disregarding contrary evidence unless a reasonable person could not. City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005). We deny a legal sufficiency challenge unless: 
(1) there is no evidence of a vital fact; (2) the evidence to prove a vital fact is no more than
a scintilla; (3) the rules of evidence or law prohibit the consideration of the only evidence
offered to prove a vital fact; or (4) the evidence conclusively establishes the opposite of a
vital fact. See id. at 810. "[M]ore than a scintilla of evidence exists if the evidence 'rises
to a level that would enable reasonable and fair-minded people to differ in their
conclusions.'" Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting
Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). 

 In conducting a factual sufficiency review, we consider all of the evidence and will
only reverse the judgment if it is so against the great weight and credibility of the evidence
as to be clearly wrong and manifestly unjust. Arias v. Brookstone, L.P., 265 S.W.3d 459,
468 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) (citing Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986)).

 Because the jury is the sole judge of the credibility of the witnesses, it may choose
to believe one witness over another. Id. (citing City of Keller, 168 S.W.3d at 819). We will
not impose our opinion to the contrary. Id. Resolving conflicts in the evidence is also
within the jury's province, and we "must assume that jurors resolved all conflicts in
accordance with their verdict if reasonable human beings could do so." Id. 

B. The Ditch

 Frank Blumberg, a businessman with experience in digging drainage ditches,
installing septic systems, and estimating "dirt volumes," testified that the cost to restore the
ditch would be $91,000, assuming the ditch is 400 feet long, 30 feet wide, and seven feet
deep. At those dimensions, approximately 3,000 to 4,000 cubic yards of dirt would need
to be removed. Blumberg stated that Richard Miller provided the dimensions to him and
that he surveyed the ditch approximately six years earlier, at which time he personally
observed the ditch to have these dimensions. When Blumberg evaluated the ditch after
it had been filled in, he did not "put a tape to it," but he "think[s] [that he] stepped it off." He
used these observations when he calculated the amount of material and cost of labor to
restore the ditch.

 However, Richard Miller testified that the ditch was 400 feet long, three to four feet
deep, and ranged in width from ten-to-twelve feet wide at one end to thirty-to-thirty-five feet
at the other end. Using these new dimensions, Blumberg estimated a restoration cost of
approximately $30,000 for removing 1,157 cubic yards of dirt. Blumberg further testified
that the estimate of $91,000 was based on his calculations in 2008 but that if he had
actually calculated the estimate in early 2005, the estimate would have "probably" been
$88,000.

 Paul Ponton testified that he filled in the ditch to a width of approximately forty-six
feet in order to make the ground level between the Pontons' property and the Millers'
property. The Millers' property is several feet lower than the Pontons' property. 

 The Pontons contend that Blumberg's opinions are based on unfounded
assumptions because Blumberg used measurements that Richard Miller provided to him,
and Richard Miller contradicted those measurements at trial. See City of Keller, 168
S.W.3d at 813. The Pontons assert that this Court cannot disregard Richard Miller's
contrary testimony. See id. However, the jury was presented evidence establishing that
the ditch was 400 feet long; three-to-four feet deep or seven feet deep; and that the dirt to
be removed covered either a width of ten-to-twelve fee to thirty-to-thirty-five feet, thirty feet,
or forty-six feet. Blumberg "stepped . . . off" the ditch when he made his calculations that
the ditch was 400 feet long, thirty feet wide, and seven feet deep. It was the jury's duty to
resolve this conflicting evidence, and we will not disturb their decision on appeal. See
Arias, 265 S.W.3d at 468. The jury's award of $71,500 to restore the ditch is not so
against the weight of the evidence as to be clearly wrong or manifestly unjust. See id.

C. The Shoreline

 The Pontons assert that the evidence to support the jury's award of $15,500 to
restore the shoreline is legally and factually insufficient. The Pontons argue that there is
no evidence that dirt was removed from the shoreline and, alternatively, that if dirt was
removed, the evidence is not sufficient to support the conclusion that the restoration cost
is $15,500. Specifically, the Pontons challenge the testimony of David Underbrink, the
president of Naismith Engineering, the surveying company hired by the Millers. The
Pontons contend that Underbrink's opinion is unfounded, arguing that he based his opinion
on Richard Miller's statements that dirt had been removed from the shoreline.

 Underbrink testified that Richard Miller hired Naismith to determine how much dirt
had been removed from the shoreline. Richard Miller told Underbrink that he believed dirt
had been removed from an area of about 300 feet to a depth of about three feet. Naismith
Engineering performed two surveys in November 2006, one of which was taken after
Richard Miller hired the company to determine the amount of missing dirt. The surveys
were nearly identical and did not indicate that any dirt had been removed between the time
of the two surveys.

 Underbrink then evaluated the survey information "to see in the contouring in the
survey information . . . [whether] there were any gouges that looked like . . . apparent holes
in the general lay of the land." He found some apparent holes, but they were not as
"drastic" as Richard Miller's estimate of three feet deep. He conservatively estimated that
dirt had been removed to a depth of one foot, for a total amount of dirt removed of 1,000
cubic yards.

 To calculate the amount removed, Underbrink used computer modeling, which
allowed him to model the contours of the shoreline. Where the survey showed a "dip"
while the computer model showed no "dip," Underbrink "tried to approximate what we
thought would be the normal surface." Underbrink further testified about his method for
determining how much soil had been removed, stating:

 The computer system sets up a grid of points and takes elevations on this
grid system for both surfaces, so it has an existing surface. And in this
case[,] the upper surface is a higher surface, so it takes those grid points and
calculates the volume under both, and [it] just takes subtraction to find the
difference.


Underbrink estimated that the cost to replace the 1,000 cubic yards of dirt and to restore
the shoreline would be $15,500.

 On cross-examination, Underbrink agreed that if dirt was removed only to a depth
of one foot, the remaining hole would be "imperceptible with the eye." He also agreed that
it was possible that no dirt had actually been removed and that he was not an eyewitness
to any such removal. However, Underbrink was "very confident" in his calculation that dirt
had been removed up to a depth of one foot. Underbrink based this opinion on two
grounds: (1) Richard Miller's statement that dirt had been removed; and (2) Underbrink's
own computer modeling of the contours of the shoreline, which indicated that 1,000 cubic
yards of dirt had been removed.

 The Pontons contend that Underbrink's opinion is undermined by Paul Ponton's
testimony that he had more dirt than he needed to fill in the ditch. The Pontons also argue
that Rocky Ybanez's, the owner of the bulldozer Paul Ponton hired to clean the shoreline,
testimony refutes Underbrink's conclusion that dirt had been removed. Ybanez stated that
Paul Ponton hired his company to clear the shoreline of brush and other debris and that
Ybanez, Paul Ponton, and Ybanez's bulldozer operator met to discuss the area Paul
Ponton wanted cleared. Paul Ponton did not instruct either Ybanez or the bulldozer
operator to remove any dirt; however, Ybanez did not supervise the actual work the
operator performed and could not state definitively that no dirt had been removed during
the clearing process. 

 During trial, Underbrink viewed a picture which showed a giant pile of debris,
including dirt, brush, and trees, that the bulldozer operator removed from the shoreline and
pushed onto the Pontons' property. Underbrink noted that the removal of 1,000 cubic
yards of dirt from an area of approximately 300 feet and a depth of about one foot is
consistent with such clearing activity. Underbrink stated, "I think the calculations and the
assumptions I made for producing those calculations more closely follow the little bit of dirt
that gets scooped up with cleaning vegetation." Underbrink's opinion was consistent with
Ybanez's testimony regarding the work Ybanez's bulldozer operator performed for the
Pontons.

 The jury's duty was to resolve any conflicts in the evidence and to weigh the
credibility of the witnesses. See Arias, 265 S.W.3d at 468. The evidence before the jury
was such that reasonable people could differ in their conclusions and is thus legally
sufficient. See Ridgway, 135 S.W.3d at 601. Our resolution of the Pontons' legal
sufficiency challenge also resolves their assertion that the trial court erred by denying their
motion to disregard and for judgment notwithstanding the verdict. See B & W Supply, Inc.
v. Beckman, 305 S.W.3d 10, 15 (Tex. App.-Houston [1st Dist.] 2009, pet. denied) ("An
appellate court reviews a [judgment notwithstanding the verdict] under a no-evidence
standard of review."); Shell Oil Prods. Co. v. Main Street Ventures, L.L.C., 90 S.W.3d 375,
387 (Tex. App.-Dallas 2002, pet. dism'd by agr.) ("A trial court may disregard a jury finding
and grant a motion for JNOV only when there is no evidence to support the finding.") (citing
Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990)). Additionally, the jury's
verdict is not "so against the great weight and credibility of the evidence as to be clearly
wrong and manifestly unjust." Arias, 265 S.W.3d at 468. Therefore, the evidence is also
factually sufficient. Id. We overrule the Pontons' second issue. 

IV. Joyce Ponton

 In their third appellate issue, the Pontons assert that the evidence is legally and
factually insufficient to support the jury's answer to question number one in the charge. 
Question number one asked the jury, "Did the Pontons trespass on the Miller's [sic]
property?" The charge defined "trespass" as "enter[ing] another's land without consent"
which "can be made by permitting a thing or person to cross the boundary of a property." 
Specifically, the Pontons argue that the evidence is legally and factually insufficient to
support a conclusion that Joyce Ponton trespassed on the Millers' land. The Millers
contend that the Pontons have waived this issue by failing to: (1) object to the charge
including both Joyce and Paul; (2) raise this issue in their motion to disregard and for
judgment notwithstanding the verdict; and (3) specifically challenge in their motion for new
trial the jury's finding that both Pontons committed trespass against the Millers. The Millers
further assert that the evidence is legally and factually sufficient to support the jury's finding
that Joyce Ponton committed trespass against the Millers.

A. Preservation

 To properly preserve error, the party alleging error must have made a timely,
specific objection or motion to the trial court and must have received an adverse ruling on
the objection. See Tex. R. App. P. 33.1. In their motion for new trial, the Pontons
specifically asserted that the evidence was legally and factually insufficient to support the
jury's finding that the "Pontons" committed trespass. By so doing, the Pontons properly
preserved their complaint that the evidence is legally and factually sufficient to support the
jury's conclusion that Joyce Ponton committed trespass. See Tex. R. Civ. P. 324(b)(2)
(requiring a party to include a factual sufficiency challenge in a motion for new trial);
El-Khoury v. Kheir, 241 S.W.3d 82, 86 (Tex. App.-Houston [1st Dist.] 2007, pet. denied)
(stating that a legal sufficiency challenged may be preserved by including the argument in
a motion for new trial). However, by preserving this issue in their motion for new trial,
should we sustain their argument, the Pontons will be entitled to, at most, a remand. See
El-Khoury, 241 S.W.3d at 90 (citing Werner v. Colwell, 909 S.W.2d 866, 870 n.1 (Tex.
1995); Horrocks v. Tex. Dep't of Transp., 852 S.W.2d 498, 499 (Tex. 1993) (per curiam)).

B. Legal and Factual Sufficiency

 The Pontons allege that the evidence demonstrated that Joyce Ponton was not
responsible for any trespass that occurred on the Millers' property. During direct
examination, Joyce Ponton agreed that she did not "have anything to do with the mowing
out there on the Miller property or the clearing of the brush." She further agreed that she
did not "have anything to do with calling the [City of Corpus Christi] and getting permission
to do that clearing." Additionally, Joyce did not perform any maintenance on the ditch. 
However, during cross-examination, she stated that, during the course of a property
dispute with the prior owners of the Pontons' lot, she and Paul Ponton received permission
to go on the land at which point, "we started cleaning [the ditch] and taking care of [the
ditch] to protect against the trees falling in. . . ." Additionally, during cross-examination,
Paul Ponton agreed that he and Joyce Ponton "hired a bulldozer to do some work out there
at the lake. . . ." Paul Ponton also testified that, once they took over the property, "the first
thing we did is try to get the ditch to where it would drain because of the smell. . . . And we
could not remove the water." Later, Paul Ponton stated, regarding the ditch, "we filled it
in."

 Ybanez testified that he charged the Pontons $3,425 for the bulldozer work they
hired him to perform on the shoreline. The record contains a check for $3,425, signed by
Joyce Ponton and made payable to Ybanez's company. Ybanez confirmed that this check
was payment for the work done at the shoreline.

 The Pontons have a bulkhead on the shoreline. According to Larry Fisher, the
survey department director for Naismith Engineering who performed a survey of the Millers'
property, the Pontons' bulkhead encroaches slightly onto the Millers' property. Joyce
Ponton referred to the bulkhead as "our bulkhead." Paul Ponton confirmed that the
bulkhead "sticks over into the Miller property." (3)

 As the triers of fact, the jury had the duty to resolve the conflicts in the evidence. 
See Arias, 265 S.W.3d at 468. The jury heard Joyce Ponton's contradictory testimony
concerning the Pontons' actions in relation to the ditch. The jury also had evidence before
it that the bulkhead owned by the Pontons encroached on the Millers' property. The jury
"may resolve inconsistencies in the testimony of any witness." McGalliard v. Kuhlmann,
722 S.W.2d 694, 697 (Tex. 1986) (citing Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792
(1951)). "They may choose to believe one witness and disbelieve another." City of Keller,
168 S.W.3d at 819. We "cannot impose [our] own opinions to the contrary." Id. We
conclude that the evidence before the jury was such that reasonable people could differ
in their conclusions and is thus legally sufficient. See Ridgway, 135 S.W.3d at 601. We
further conclude that the jury's determination that the Pontons trespassed on the Millers'
land was not "so against the great weight and credibility of the evidence as to be clearly
wrong and manifestly unjust." Arias, 265 S.W.3d at 468. Therefore, the jury's answer to
question one is supported by factually sufficient evidence. Id. The Pontons' third issue
overruled.

V. Conclusion

 Having overruled all of the Pontons' appellate issues, we affirm the judgment of the
trial court.


 ______________________________

 GINA M. BENAVIDES,

 Justice

 

Delivered and filed the

26th day of August, 2010.

1. Because this is a memorandum opinion and the parties are familiar with the facts, we will only
discuss the facts insofar as they relate to the ultimate disposition of this appeal. See Tex. R. App. P. 47.1.
2. Because we have overruled the Pontons' first issue, we do not address their subissue in which they
state that the proper relief, should we sustain their first issue, is a remand on both damages and liability. See
Tex. R. App. P. 47.1.
3. Prior to the conclusion of the evidence in the underlying trial, the parties agreed that, by adverse
possession, the Pontons acquired title to the surface area encroached upon by the bulkhead. In its judgment,
the trial court incorporated the parties' agreement and rendered judgment vesting title in the Pontons to the
property formerly owned by the Millers upon which the bulkhead encroached.